Thank you, Judge. May it please the Court, I'd first like to thank the Court for the opportunity to appear before the Court remotely during the pandemic, and I would ask to reserve two minutes for any rebuttal. Sure, Judge, or excuse me, to the panel. The appeal in this case has two issues presented for review. The first is whether the District Court committed error by applying the first-to-file rule to appellant's case when it determined that the PICA action was first filed. The second is whether the District Court committed error by dismissing the case with prejudice rather than staying on its consolidated amended complaint. And the appellant in this case admits that the Court should reverse the District Court's dismissal with prejudice. Your Honors, the first-to-file rule does not apply in this case, and it doesn't apply for three reasons, and it's more outlined in the brief. But to discuss that, the first reason is that the PICA plaintiffs, which was the case that was filed first in the Central District of California, made the strategic decision not to include 24-7, who is the defendant and party in this case ultimately responsible for the data breach at issue in the litigation among three cases that brought putative class actions on behalf of consumers for the data breach. So because the PICA plaintiffs made the strategic decision not to include 24-7 in their initial complaint, the first-to-file rule should not have applied. Counsel, to reach your position, do we have to apply relation back? Because the PICA complaint, I understand, was filed first, but the amended, the second amended complaint was the one that brought in 24-7. And so I think your argument is that we're not looking at chronological order, we're looking at something else. Does it have to be the relation back rule, or is there another way to get there? Judge, I believe in our briefs we do argue that the relation back doctrine should be considered. I do not believe there is a Ninth Circuit case that has considered relation back for the first-to-file rule. And the appellants would submit that the relation back doctrine should be examined, but that if relation back does apply to first-to-file rule, that it would dictate that the PICA action was not the first filed case. And Judge, that again goes to the strategic decision that the PICA plaintiffs made in not including 24-7 in their argument about the relation back rule. Why would we want to complicate this any more than it is? Judge, because... The rule has three factors. One is the chronological similarity parties and similarity of issues. Why is it necessary even to consider the relation back when you look at the complaints in this case, in these cases? Thank you, Judge. And I believe that it's because of the procedural posture of this case that precisely dictates why relation back should be considered in first-to-file cases, because it can incentivize unscrupulous attorneys to rush to file a case in a district such as the PICA plaintiffs did here, where not many, if any, other plaintiffs can file their case in the central district. And then they have a strategic advantage over the entire litigation, where... So I agree with the point you're making. It makes perfect sense. But the issue that is troubling me is that making a relation back decision under Rule 15 is complicated when you have the very parties in front of you. So this would seem to introduce new levels of complexity and difficulty for a district court to make a decision on relation back about parties in a different matter, perhaps even in a different district, in a different jurisdiction. So, you know, is there... I think Judge Pius's point is there's three prongs here. It doesn't have to be the chronological prong, but if that's what you're depending on, does it have to be relation back? I mean, this is an abuse of discretion decision, correct? Yes, Judge. Okay, so the judge could conceivably consider a number of factors on the timing issue, including when they were filed, when parties actually came at issue by amendment, you know, whether it appears that there's some kind of bad faith race to the courthouse, those kinds of things that might get at the abuses you're addressing. And Judge, I suppose that the court could take the substance of what the relation back doctrine would bring. That is essentially what we asked the court to do, was to consider the, not only the chronology, but the substance of the lawsuits here. Because again, the peak of plaintiffs brought this suit in a very limited subset of issues against only Delta. And after we, as the appellants, but in the district court, and when we brought this to the judicial panel on multi-district litigation, we specifically, or excuse me, the peak of plaintiffs, when they were at the panel specifically argued, they had no intention of suing 24-7 for this case. They were only interested in Delta. And it was after two motions to dismiss and two amendments that 24-7 was finally brought into this case. And even when 24-7 was brought into the case, the peak of plaintiffs still only concentrated on the Delta interactions. And we did argue before the district court, and we've also briefed that before your honors, that even though there the substance of the complaint only focused on Delta interactions. So why isn't that argument sufficient to say that the relation back doctrine, I mean, the first file doctrine shouldn't apply here. Because your honor, the substance of the overlap of the cases is not substantial. Well, maybe I said it wrong, but what I meant to say was, even when the second amended, I guess it was a second amended complaint was filed in the PICA case, the two named plaintiffs in PICA were only plaintiffs who'd had interaction with Delta. And so they linked, they eventually linked in 24-7. As I understand your case, your case only dealt with 24-7. And the parties in your, the plaintiffs in your case had dealt with Best Buy. There was one other one, I think, Delta alluded to in the complaint, in your allegations in the, as you tell the story in your complaint. But the plaintiffs, when their information was breached, were talking about Best Buy. And that, you know, when you look at your complaint, it doesn't bring in all this preemption business that you have to deal with in the PICA and the other case. So I, you know, I, for me, when I looked at this, the two, the complaints to me substantively look different. Yes, Your Honor. They may have arisen from the same data breach situation, but they are, they are in my sense, in my, when I looked at this, I read the PICA complaint and your complaint, they strike me as different. And that's precisely why I judged the first to file rule should not have applied in our case. Right. I mean, you're, when I tried to make sense out of your first, the relation back, I mean, it just complicates the analysis, which in this particular case is not necessary. But Mr. McGee, I'm concerned about something. And I've read the record maybe a little differently than Judge Pius. I thought one of your named plaintiffs, Mr. Rudolf Dubrovsky, was alleging his personal data was released because of his interactions with Delta, that there are Delta related plaintiffs in your class. Is that not true? Because I thought that was part of your argument as to why those, at least as a minimum, those plaintiffs claims should have been stayed pending the resolution in PICA that your class did, it did involve Delta, didn't it? Yes, Your Honor. We had plaintiffs who had relationships with Delta and Best Buy, and then there were also relationships with Sears and other third parties. And perhaps it might benefit the court. 24-7 is a chat program that had chat services for Delta, for Best Buy, for Sears, and for other companies. So they are kind of the central party in this case. And it spiders out from there that 24-7 had relationships and interactions. Well, Delta was not named as a defendant in your case. With all sumers in this case, and ultimately no judge, we did drop and dismiss Delta from our case. When? Were they a defendant at the time the PICA second minute complaint was filed? They were not. I would have to look, and I apologize, Judge, but I know that I do recall that we dropped Delta and Best Buy, I believe, in our first amended complaint, but I would have to look at that. It strikes me, though, that to the extent in your case that there is even any allegation regarding Delta and the problems with preemption and whatnot under the Airline Deregulation Act, is that to the extent there's any attempt to hold liability on 24-7 because of its relationship with Delta, that that part of your claim would be preempted, but the other parts dealing with Best Buy and other retailers where there's no problem with the Airline Deregulation Act would be perfectly, you know, it could go forward. You don't have that preemption issue. Correct, Judge. We don't have the issue. I, of course, would not concede the Airline Deregulation Act would apply on Delta. I know that the Central District of California made that determination, and I know that's before your honors in PICA and McGarry, which are, I believe, submitted. They were going to be argued today, but they've been submitted, but you are correct. The PICA action was dismissed because of the Airline Deregulation Act twice, and even if the Airline Deregulation Act were to apply to Mr. Dabrowski, it would not apply to our three other plaintiffs, and it would not apply to the greater part of the case that we are seeking to represent, and the consumers who have been harmed through interactions with 24-7 and other third parties that are not named defendants, that 24-7 was ultimately responsible for mishandling their personal information. Let me ask you, there's another argument here in our case law that the district court may have overlooked, and she dismissed this case. When she said that the first file doctrine applied, she dismissed the case with prejudice. When she decided that it couldn't be transferred, she initially ordered or said it was going to be dismissed, but then when she signed the order, it was a dismissal with prejudice, which just under our case law, even if you apply the first file doctrine here, and she determined correctly, nobody seems to quibble with this, that it couldn't be transferred to LA, to the central district because of venue problems, then the remedy, the proper remedy should have been, she just should have stated because she'd been alerted, she'd been informed that the district court in the central district had tentatively decided to dismiss the PICA case. Yes, your court, and I believe it's the record at 80 that you're describing here, the preliminary application of the first file rule, the court did ask for a briefing from the parties and literally on the due date of that briefing, the PICA court did dismiss with prejudice and the parties asked for, I believe it was four extra days, for plaintiffs and the appellants to submit additional briefing on the implications of that dismissal with prejudice and the analysis of Bozic, Inree Bozic, which this court decided, but did the district judge give any explanation of why without she was dismissing, knowing that the other case was dismissed? Judge, she did engage in an initial analysis that there were three options under the first file rule, that there was transfer, stay, and dismissal. And another problem with the court's ruling was there was no discussion of a stay whatsoever. But I do not recall, and I apologize, but I do not believe the court engaged in a substantive analysis of why dismissal with prejudice was proper. I couldn't, I could not find it. This discussion that we've just had probably supports the notion that we're dealing with two cases that have some similarities between them. When I look at the complaints, they have a general negligence claim, which is similar. Some different parties, different state statute claims in both lawsuits, different ones, not the same ones. I'm curious for your response to this question in this context. If one case has a threshold as positive issue, like preemption, does that trump, does that automatically preclude the application of the first filed rule? I don't believe so, Judge. And as you pointed out, when there are other aspects of a case that could not have any application of a preemption, such as the Airline Deregulation Act, it should not prejudice plaintiffs who, again, are individual until the case is certified. So those plaintiffs who have dealings with another party, such as Best Buy or Sears or any other third party in this case, where the Airline Deregulation Act or that preemption in the greater context would apply, that would result again in extreme prejudice to these would have completely gone forward with their claims. And there may have been other issues that would be litigated. But the issues that were litigated in the PICA action could not apply to three of the four plaintiffs in this case. And that is one of the overarching themes here of why the district court did commit error and did abuse its discretion in dismissing this case with back to the analysis. I'm sorry, Mr. McKee, I know we're keeping you over time and you did ask for rebuttal, but I do want to ask you something. And I know Judge Pius is very generous on time. I'm sure he won't. No, we'll make sure you get time for rebuttal. He won't take away your rebuttal time because we've been grilling you a bit. I'm listening to this argument. We're having some really complex discussions about the first filed rule. And I'm wondering if we even get there. I mean, if the district judge abused her discretion in dismissing this case with prejudice, if we were to decide that, isn't it over? I mean, do we even have to reach the first file rule? Because we would remand, the case would no longer be dismissed and would go on for further proceedings? Well, I think it would, Judge. I think that it would be important to reach the issues of the first file rule and whether it does apply. Because my clients and the appellants in this case would only have really two options. And that's a transfer, which the court determined could not be done and is not here on appeal, or a stay. And that stay would again put my clients in limbo until this court decides the Pika and McGarry actions. That's what you asked the district judge to do, right? Was to stay the matter. So even if the and and then you have the ability to continue to argue, I mean, I don't know why we need to reach the first trial rule. We certainly shouldn't be offering any sort of advisory opinion. I mean, but if this can be resolved simply on abuse of discretion and dismissal of prejudice, I guess I don't understand why we have to wade into the relation back issue and the substantial similarity between the lawsuits, etc. I think, Judge, it's because there's a potential class that have been precluded and preempted from pursuing damages and litigation in this case. But the other, you know, the greater sum of plaintiffs and the total class here that would have interacted with 24-7 will again sit in limbo and just sit on the sidelines. But you know, if the court were inclined, we do ask for that relief, and it would be to remand with a stay. But, you know, we would ask that the stay be related only to the issues that are preempted, and that would be the interactions with Delta, but not to be applied to really any other litigants in this case. Okay. I'll give you some time for rebuttal. Let's hear from 24-7. Good morning, Your Honors. Good morning. Good morning. I'll jump right in, and I'll just respond to the questions that the courts have asked, and I will do it in reverse order, beginning with a quick response to the chronology question, because I think it's important here. The overarching theme of the first defile rule is that it's inherently discretionary on the behalf of the district court judges who need to manage their packets, and it's very important in today where you have lots of data breach class actions filed, especially in the northern districts, especially serial class actions filed, but not to be consolidated with the JPML. So this is an issue that litigants like both Mr. McGee and myself and our clients deal with. And I think it's important for this court to know, and it's specifically responsive to a couple of the questions, that this case did not start out as a PICA action against Delta and the Ford action just against 24-7. Your Honors are correct that this case started out with just two plaintiffs in the PICA action. One is a Delta plaintiff, and one is a Best Buy plaintiff. So this case, the PICA case, has always been a Delta case from the beginning. Delta was a defendant, Best Buy was a defendant, and the plaintiffs only, in the PICA case, only chose to voluntarily dismiss Best Buy and voluntarily dismiss Delta once the central district had dismissed Delta as a defendant. You're saying the PICA case? Do you mean the Ford case? I mean the Ford case, I'm sorry. I think you might be a little bit far from your microphone because I'm having a little trouble hearing you. I don't know if the other judges are, but you're breaking up a little bit. Okay, can you hear me better now? Yes, thank you. Yeah, so that's correct. So the Ford case started out with just two plaintiffs, right, Dabowski and Ford. Dabowski was a, let's see, and Delta were defendants in the case. So when they started out, there were three defendants in the Ford case, right? It's always been a Delta case, and it always has been. So it's slightly disingenuous for Mr. McGee to say that his case was always a 24-7 case only. His case became a 24-7 case after the central district issued its order on September 18, 2018, dismissing the case on ADA preemption. In fact, on September 26, 2018, about a week later, is when the Ford plaintiffs amended their complaint to remove Delta and Best Buy as plaintiffs. So keep in mind, as a discretionary matter, Judge Freeman knew the gamesmanship that the Ford plaintiffs were playing with their complaint. This case was originally a Delta case. It had a Delta class allegations. It remained having Delta class allegations even after the amendment that began to have parallel. Go ahead, Judge. No, I was just going to say, I mean, you said games. I mean, maybe they just realized that if they had Delta in as a defendant, the ADA would probably preempt them. Correct. So they got rid of Delta. Why is that playing games? Because from, keep in mind, from the beginning of this case, right, we have had three, actually, there were four cases, right? There were two cases filed on an identical data breach in in the northern district, right? And there were one case filed down in Georgia and one case filed in the central district. The first case is the Peking case. And so the parties are all, I mean, y'all work very professionally together to try to efficiently litigate the matters. And the plaintiff's counsel strategically pick and choose how to very creatively plead an allegation, plead a class definition so that their case can come perhaps first file or slightly different. And this isn't a new issue for the ninth circuit or for the northern district, right? When courts compare first filed cases and class actions, they say, well, there's a nationwide class here. And the second file only has a New York claim. And the first case only has a California claim. That's okay, right? There doesn't need to be perfect identity of parties and issues for the first file doctrine to apply. They look at key issues, core issues, substantially overlapping issues. That's exactly what Judge Freeman did here. And she had the history of the case where she knew this was a Delta case. She knew that even after amendment, Your Honor, that the Ford plaintiffs continued to have the Delta customers within their class definition. That's important. They could have specifically excluded the Delta customers from their class definition after they knew the central district had dismissed the Delta case or the PICA case on ADA preemption, but they didn't, which was a significant factor in agreement finding that let me ask you this. If we, you recall what Judge Beatty mentioned a minute ago, even if we were to agree with you that the first file doctrine should apply here, it seems like you got more out of Judge Freeman than you should have. She dismissed the case without prejudice. What's the basis for that? I mean, I can't argue with you there. We didn't ask for the case to be got that ruling, but I'm going to mind my P's and Q's and not tell you what happened, but you're correct. And it's a challenge. And so if you were to ask me what should happen here, I do believe she did not abuse her discretion in doing what she did, but is the best thing for all parties to go back and give her another opportunity to perhaps dismiss without prejudice? Probably. But let's talk about what actually a dismissal with prejudice means in this context, right? The first file rule is jurisdictional doctrine, right? And I can quote, I have a great case actually from you, Your Honor, Pius, that you love it when counsel does that. No, I don't because I would never remember the case. I can cite it for you and we can have a kind of a good conversation because these, and I mean, both Mr. McGee and I play in a very small sandbox and both of us, I think, welcome the intellectual dialogue here because it matters to both of our clients as a very important issue. But when you dismiss a case on the first file, Judge Freeman was not making a determination on the merits. She just wasn't. She was saying, I in the Northern District do not have jurisdiction to hear your claim. That is not an opinion on the merits, right? But she couldn't, but she decided that she couldn't transfer it to the Central District. So who can entertain their claim? So that is a very good question. And we've been strategizing about that for a long time, since the plaintiffs filed their reply, disagreeing with my proposition in my client's that says that the Ford plaintiffs can still be absent class members in the PICA and frankly, the McGarry class, the classes that are currently pending before this very panel on the Ninth Circuit. They do actually still have claims to the extent they can get around claim preclusion. Now we don't know those are outstanding issues because the PICA and McGarry cases are still live. And they still involve Delta customers, Sears customers, Best Buy customers, and the Ford plaintiffs are all still absent class members. Let me just assume this for a moment. And it's just hypothetically speaking for purposes of our discussion here in this case. But the cases out of the Central District are affirmed on the Airline Deregulation Act, and there are no cases pending in the Central District. What happens to the Ford plaintiffs? So that's a very good question. With a dismissal with prejudice. I mean, there's no case. So that's a very good question. And I can't answer it globally because the Ford plaintiffs are each different, right? So three of the Ford plaintiffs are Best Buy customers. And one of the Ford plaintiffs is a Delta customer, right? So under your scenario, and granted, you're asking me, which would ask Judge Freeman to hypothetically speculate about a dismissal in the future, which is not the law on the first to file doctrine. But I'm happy to engage in this discussion because I think it's important. But if we're allowed to speculate down this train, the Ford, if the Ninth Circuit were to affirm both PICA and McGarry on the record before it, those, there would be race judicata with respect to any party who would be in privity with those plaintiffs, right? In my opinion, it would be a no brainer that a Delta plaintiff would be in privity with the PICA and McGarry plaintiffs, where their claims would be forever barred based on race judicata. That's only one small, that's only, I want to say small, but that's only one aspect of the current Ford complaint. Well, I agree with you kind of, right? That is a very large aspect, but that is not how race judicata claim preclusion works. It is a claim by claim basis. So the key going forward, right? Was there an adjudication on the merits of the Best Buy 24-7, right? Be able to argue, issue preclusion or race judicata. That would depend on what the ruling is in the Ninth Circuit. If the Ninth Circuit were to rubber stamp the central district's orders and 24-7 and Delta were to win their appeal, we would have to argue, you know, if there were claim preclusion. Now keep in mind that 24-7 and Delta did not just win ADA preemption in the Both Delta and 24-7 have won the Stored Communications Act claim on 12b6 for failure to state a claim. Issues much larger than ADA preemption. Issues that the PICA or the Ford plaintiffs easily gloss over. Also issues that the PICA plaintiffs gloss over is that Delta previously had the case dismissed on 12b6 for failure to state a claim. All of their claims on the first amended complaint. So those issues and Judge Freeman knew that the central district had already issued rulings dismissing the complaint related to the data breach above and beyond ADA preemption. And Judge Freeman was in the best position to know that. Now, of course, I want to be intellectually honest with you, you know, should she have done that with prejudice? You know, probably not. It's pretty inconsistent to have a jurisdictional dismissal with prejudice. You've got me. When I read her order, I didn't take it to be a careful, detailed analysis of claim preclusion or race judicata. Or could it be? Because when you read her order, when she says the case should be dismissed, fine, she can do that. But then she goes on when she enters the order and dismisses it with prejudice. And really, I think under our case, if you read our case law, when she was alert, when she had been alerted that the action in Los Angeles had been dismissed, final ruling had been made, it seems like under our case law, that the proper, once she determined that the first file doctrine applied, the proper remedy was just simply to enter a stay. So let it other cases. You're correct with with I'll bicker with you. The Dolores press case in the Ninth Circuit came out one month after her ruling. So that very holding, she did not have the benefit of the Ninth Circuit clarity of that specific ruling until one month after her order came out. So and that case does hurt your argument and does support the prejudice in this instance was inappropriate. Agreed? I agree. Now granted, that's not a class action case. Secondly, all four of those cases addressed in Dolores press were in the same circuit at individual parties, a very tortured intertwined relationship. And so the issues and the you know, the concerns and the prejudice that Judge Freeman had in front of her sitting in front of her were not the same as the court in Dolores press. But I can't argue with you. Ninth Circuit precedent is Ninth Circuit precedent. If Judge Freeman had the benefit of that order, would she have dismissed without prejudice or stayed? You know, I don't know. But it's certainly a possibility. And I want to be honest with the court. We don't know that we could send it back and give her a chance to explain couldn't we? That would be acceptable to to 24 seven, of course. So what would happen? I mean, if we issued a decision that didn't even reach the first file rule, just left her order intact, and remanded and found that she abused her discretion and dismissal with prejudice. What do you think happens at that point to the plaintiff's claims? Sure. And we've thought about that a lot, right. And we've, you know, talked with plaintiff's counsel a lot about that. Like I said, both of us are very intellectually curious about this issue. My position is that we would ask Judge Freeman to allow us to rebrief the issue of the remedy, right? So if the, I mean, Mr. McGee is correct, this is a two pronged approach, we have 24 sevens position is Freeman was correct, that the first to file doctrine applied, right? However, if the Ninth Circuit takes issue with the remedy, the remedy she imposed, once she found that the first to file doctrine was correct, then both parties should rebrief the remedy. And hopefully, Judge Freeman would also reopen the potential remedy to transfer the case. I think it's important here that Judge Freeman ruled that under Inri Bozic, right? She was not able to transfer because on the record before her, it was unclear whether venue was proper in the central district. And the parties have the ability to one, rebrief whether venue is proper there. And Judge Freeman's order also noted, and you know, Mr. McGee is free to correct me, but that she could not transfer it because Mr. McGee and his clients did not consent. So under Bozic, 24 seven as the defendant cannot consent to transfer to get around 1404A, but the plaintiffs could consent to transfer. So if this simply remanded limited to the issue of the remedy under first to file, because the abuse of discretion was simply the dismissal with prejudice and allow the parties to rebrief what the proper remedy is, including whether there still remains an option to transfer over to the central district, which is an alternate remedy that 24 seven did propose to Judge Freeman. That's what we propose would be a proper remedy, giving her the benefit of now reviewing Dolores Press, which she did not have the benefit to do at the time. So may I ask you this, would that be a meaningful remedy? If there are no cases pending in the central district? Your Honor, I do believe so. I mean, if you keep in mind the first to file rule is an exercise of judicial comedy, right? And they're trying to preserve judicial resources, right? So the judge in the central district has already heard this case about four times, right? Because not only does he have PICA, but he also has McGeary. So he has a good understanding of the facts, a good understanding of the case. And so arguably he is in the best position to hear whatever case may proceed. And I submit that may be no case, right? And I'm sure Mr. McGee may argue that it's the entire Best Buy case, but I don't believe this court needs to decide that issue. If there is any case to be decided, it needs to be decided at a later date. And if there is any case to be decided, certainly the central district is in a better position to be deciding that. That is what we argued credibly to Judge Friedman. All right. Thank you. We'll put two minutes up on the clock for a revival. Unmute. Sorry, Judge. It happens to all of us. I would like you to address somewhere in your comments, briefly, your opponent's argument that this has always been a Delta case. Judge, Delta has always been an aspect of this case. However, it is the subset that PICA only addressed Delta interactions in their complaint. And they only pursued Delta for this data breach for over 150 days until the PICA court dismissed the case. And the PICA plaintiffs were only given one more option to amend and finally brought 24-7 into the court. And this is not a case where we have to speculate about what the PICA plaintiffs were doing or why they were doing it, because we have the complete record before the judicial panel on multi-district litigation where they said, in essence, they have no interest in pursuing 24-7 for this case. So again, I go back to whether the court should engage in the first to file rule and whether it should apply here. And again, the first to file rule, we admit it applies, except in rare and extraordinary circumstances. And we submit that this is one of those rare and extraordinary circumstances because the PICA plaintiffs did not pursue 24-7 until they were basically forced to because the PICA court said, I'm going to dismiss your case with prejudice if you do not carefully plead it a second time. So what makes that rare and extraordinary? Because it seems we've had the briefings engages in the debate about what's happened in various district courts, whether you just follow straight chronology, which complaint was filed first, whether you apply the relation back rule, that amendment, subsequent amendment that brings in a party that's common to both lawsuits is a fairly common situation that the district courts have been grappling with. So what propels this on those facts into a rare and extraordinary case? Well, because that amendment, Judge, was not because of mistake. It was essentially because they were given one more option to pursue the most parties and defendants as they could. So when the relation back is applied, it's when there's mistake on identity or anything else. Here, when Delta made the announcement before PICA filed its action, and obviously before four plaintiffs filed their action, they said 24-7 was their chat. And Best Buy also released a press release that said 24-7 was responsible for this. Sears released a press release saying 24-7 was responsible for this data breach and the loss of the information. We had a pretty detailed discussion with your opposing counsel about what would happen if we remanded, found an abuse of discretion for dismissal of prejudice and remanded for the district judge to consider the remedies as Ms. Cullingham advocates. What do you think happens? And is that not satisfactory for your clients? Well, Judge, I think that puts us back into where Ms. Cullingham and I were on February 11th, 2019, when the PICA action was dismissed with prejudice. And we did ask the court to be able to address Enri Bozic and all of the others. And now with the benefit of Delores Press, we have that dismissal with prejudice would be an absolute abuse of discretion. I know I'm two minutes over my already two minute allotted time. I just want to make sure my colleagues had their chance to ask you any questions. I'm fine. Thank you. Okay. All right. All right. Thank you, counsel. We appreciate your arguments this morning. Interesting questions. And the matter is submitted at this time. And that ends our session for today. Thank you very much.
judges: Paez, Zouhary, Bade